Phil J. Montoya, Jr. (SBN 124085)
**HAWKINS PARNELL & YOUNG LLP**
445 South Figueroa Street, Suite 3200
Los Angeles, CA 90071-1651
Telephone: (213) 486-8000
Facsimile: (213) 486-8080
Email: pmontoya@hpylaw.com

*Attorneys for Plaintiff Khoros, LLC*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOROS, LLC<br><br>                              Plaintiff<br><br>        v.<br><br>LENOVO SINGAPORE PTE LTD,<br>LENOVO HK SERVICES, LTD., and<br>LENOVO (UNITED STATES), INC.,<br><br>                              Defendants. | Case No.:<br><br>**PLAINTIFF'S COMPLAINT**<br><br>*[REDACTED VERSION OF<br>PLAINTIFF'S COMPLAINT<br>SOUGHT TO BE SEALED]* |

Plaintiff, Khoros, LLC ("Khoros"), for its Complaint against Defendants Lenovo Singapore PTE Ltd. ("Lenovo Singapore"), Lenovo HK Services, Ltd. ("Lenovo HK"), and Lenovo (United States), Inc. ("Lenovo USA") (collectively "Lenovo") alleges as follows:

## NATURE OF ACTION

1.      This is an action for breach of contract and for misappropriation of trade secrets.

/ / /

/ / /

1

**THE PARTIES**

2.      Plaintiff, Khoros, LLC, is incorporated under the laws of Delaware and headquartered in San Francisco, in San Francisco County, California.

3.      Defendant, Lenovo (Singapore) PTE Ltd., is, on information and belief, a private company limited by shares, incorporated in Singapore with a principal place of business in Singapore.

4.      Defendant, Lenovo HK Services Ltd., is, on information and belief, organized under the laws of Hong Kong and headquartered in Hong Kong.

5.      Defendant, Lenovo (United States), Inc., is organized under the laws of Delaware and headquartered in North Carolina.

**JURISDICTION AND VENUE**

6.      This Court has original jurisdiction over this matter pursuant to 18 U.S.C. §1836(c).

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiff asserts a federal cause of action under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C.§1836(c).

8.      This Court has personal jurisdiction over Lenovo Singapore because it entered a thirteen-year contractual relationship with Khoros, a California resident. The terms of the contract were to be performed in the State of California at the direction of Lenovo Singapore's agent and *alter ego*, Lenovo USA. When contracting with Khoros in California, Lenovo Singapore bound itself to a continuing obligation of confidentiality.   Lenovo Singapore's breaches of its agreements with Khoros caused damage to Khoros in California.

9.      This Court has personal jurisdiction over Lenovo HK because it entered a long-term service contract with Khoros, a California resident. The terms of the contract were to be performed in the State of California at the direction of Lenovo HK's agent and *alter ego*, Lenovo USA. When contracting with Khoros in California,

2

Lenovo HK bound itself to a continuing obligation of confidentiality.   Lenovo HK's breaches of its agreements with Khoros caused damage to Khoros in California.

10.    This Court has personal jurisdiction over Lenovo USA because it is registered to do business in the State of California and maintains a registered agent for service of process in California. By acting as the agent and *alter ego* of Lenovo Singapore and Lenovo HK, Lenovo USA engaged in ongoing and long-term dealings with Khoros employees located in the State of California and is bound by contracts entered into, performed, and breached (by Defendants) in California. Lenovo USA also engages in business operations which constitute continuous and systematic contacts with  the State of California.

11.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the contract at issue was intended to be and was performed in the State of California, was breached in California by Defendants, and caused damages to Khoros in California. A substantial portion of the events giving rise to this action occurred in San Francisco County, California.

## FACTUAL BACKGROUND

### I.    Khoros's business.

12.    Khoros was formed in October 2018 as a result of a merger between Lithium Technologies, LLC ("Lithium") and Spredfast, Inc. ("Spredfast").

13.    The intent of the merger was to form a company focused on the development of social media marketing platforms and web-based communities; Lithium and Spredfast were category creators and leaders in social customer care, social media marketing, and communities.

14.    At the time of their merger, Lithium and Spredfast collectively managed over one billion customer connections a day across social media, messaging, and owned digital channels, hosting platforms for more than 2,000 brands spanning 100 countries.

3

15. Creating and hosting web-based community platforms for customers is one of Khoros's primary business lines.

16. Khoros's community software and services help brands connect with customers to grow existing relationships, build new ones, and create a platform for these brands' customers to interact, increasing brand loyalty and driving repeat sales.

17. In that regard, Khoros provides a branded, interactive community platform for spreading knowledge that transforms search, evaluation, purchase, and support interactions into valuable customer learning experiences.

18. One of the greatest benefits of these interactive community platforms is the deflection of call-center support questions, providing its customers with substantial savings in terms of call-center time, money, and resources.

19. Khoros is one of only a handful of major companies in the third-party community platform creation/development business and is viewed as an industry leader.

20. Over a period of fifteen-plus years, through the expenditure of hundreds of millions of dollars in research and development, and the experiential benefit of basic trial-and-error over the same time period, Khoros has created a community platform software product that has a look, feel, and functionality that is (1) an industry leading product; and (2) distinctively Khoros's.

21. While Khoros's customers are permitted (and encouraged) to work with Khoros to customize how their community looks superficially, the overall functionality of the communities is particular to Khoros.

22. The community components made available by Khoros's product are a key differentiator for Khoros in the community platform marketplace.

23. Khoros offers the industry's most comprehensive suite of solutions in one platform, providing integrated workflows and actionable insights from every customer

4

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

conversation that enables them to deepen their customer bonds and grow their business.

24.     Khoros also provides its customers with rich data and analytics, along with the industry's most cutting-edge benchmarking to help brands optimize their customer engagement efforts.

**II.     Lenovo and its U.S. operations.**

25.     Lenovo is a Chinese multinational technology company with headquarters in Beijing.  Lenovo manufactures and sells (among other things) personal computers, tablets, smartphones, servers, and other electronic devices.

26.     According to Wikipedia.com, Lenovo is the world's largest personal computer vendor by unit sales, as of March 2019.

27.     Lenovo is a massive integrated global entity with hundreds of subsidiary companies.

28.     Lenovo's U.S. operations are run out of Morrisville, North Carolina by its U.S. subsidiary, Lenovo USA.

29.     Lenovo ignored corporate formalities and traditional parent-subsidiary relationships when it dealt with Khoros.

30.     Over the course of Khoros's 13+ year relationship with Lenovo, every single contract negotiation, every service or product order, all day-to-day operational communications, all troubleshooting, and all other communications or decisions in general were handled and/or made through employees of Lenovo USA who were based in North Carolina.

31.     Despite Lenovo USA handling the relationship with Khoros, Lenovo insisted that the signatories to Khoros's contracts be with other Lenovo entities based outside of the United States.

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

32.    The original 2007 contract between Lenovo and Khoros (the "Master Services Agreement" or "MSA" ) was signed on Lenovo's behalf by Lenovo Singapore.

33.    A true and correct copy of the MSA, along with the parties' original Service Order, is attached hereto as Exhibit A.

34.    The original Service Order associated with the MSA was approved by Mark Hopkins of Lenovo USA.

35.    A new Service Order was executed between the parties in 2018 (the "2018 SO").

36.    A true and correct copy of the 2018 SO is attached hereto as Exhibit B.

37.    The 2018 SO was negotiated with Amy Tupper of Lenovo USA, but ultimately signed by a putative employee of Lenovo HK.

38.    As a result of the way Lenovo operated its business, at all times Khoros considered itself to be contracting with the Lenovo group of companies as a whole, all run through Lenovo USA, as the Lenovo entities' agent and/or corporate *alter ego*.

39.    Lenovo treated the parties' relationship exactly the same way.

**III.    Khoros's contract with Lenovo.**

   **A.    The original Master Services Agreement and Service Order.**

40.    As referenced above, effective September 27, 2007, Lenovo entered into a "Master Services Agreement" ("MSA") with Lithium, the company that ultimately became Khoros *via* merger.

41.    Khoros assumed all applicable Lenovo contracts when Lithium and Spredfast merged including the MSA and all associated SOs and SOWs.

42.    At the time the MSA was executed, Lithium was headquartered at 5980 Horton Street, Emeryville, California, 94708, within this Judicial District, and the contract was therefore made and entered into in California.

43.    Khoros continues to maintain an office in California.

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

44.     The MSA acted as the "base" agreement governing the parties' relationship.   It was supplemented by both Service Orders ("SOs") or Statements of Work ("SOWs") at various times throughout the parties' relationship.

45.     As described above, while the MSA was signed by Lenovo Singapore, representatives of Lenovo USA negotiated the MSA, provided direction as to work, engaged in communications regarding the parties' contractual relationship, and directed payments to Khoros under the MSA and related Service Orders.

46.     The original Service Order entered into between the parties in association with the MSA was specifically for Lenovo USA, with Mark Hopkins of Lenovo USA in North Carolina being the primary contact.

47.     Khoros was informed by Lenovo USA representatives that the only reason that Lenovo Singapore signed the MSA and original SO was because the value of the contract was above the monetary threshold for the Lenovo USA to sign without approval from its parent company(ies).

48.     The same was true for the 2018 SO.

49.     **REDACTED**

50.     **REDACTED**

51.     **REDACTED**

52.     **REDACTED**

53.     **REDACTED**

54.     MSA §10.3 expressly prohibits the disclosure and/or misuse of Khoros's Confidential Information.

55.     The confidentiality requirements imposed by MSA §10.3 survived the termination of the parties' agreement.

56.     Under the MSA, Khoros retained all of its intellectual property rights.

57.     Lenovo expressly agreed not to copy or reverse-engineer Khoros's software, to keep Khoros's non-public information confidential, and to immediately

7

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

1  cease using Khoros's software and information upon the termination of the parties'

2  relationship.

3  **B.  Subsequent SOs and/or SOWs.**

4  58.  In 2018, the parties entered into the 2018 SO.

5  59.  As was the custom, with respect to the 2018 SO, the primary Lenovo

6  contact listed on the face of the SO was Amy Tupper of Lenovo USA.  All billing and

7  payment under the 2018 SO was handled through Lenovo USA.

8  60.  As further evidence of Lenovo's disregard of corporate formalities, yet

9  another Lenovo entity – Lenovo HK signed the 2018 SO for Lenovo.

10  61.  The 2018 SO incorporates the MSA, and Lenovo HK acknowledged that

11  it too was Khoros's customer for purposes of these agreements (*see* 2018 SO, ¶ 1).

12  **C.  Lenovo steals critical portions of Khoros's platform to create its own**
     **copycat version.**

13

14  62.  On or about November 2017, Lenovo USA informed Khoros that Lenovo

15  was considering terminating the parties' relationship and would instead create and

16  host its own community webpage.  Despite that communication, Lenovo was not

17  prepared to venture out on its own, and in March 2018 renewed its relationship with

18  Khoros *via* the 2018 SO.  In November 2019, Lenovo informed Khoros that it was

19  nearing completion of its own community site and planned to terminate the parties'

20  agreement, but asked to extend it by only one year.

21  63.  Khoros did not agree to renew the agreement. So, the MSA was

22  terminated. The Lenovo self-hosted community webpage ultimately went live on or

23  around February 21, 2020.

24  64.  For purposes of its claims here, Khoros's software can be understood has

25  having three (3) main components.  First, there is the rendered HTML source code

26  that effectively "creates" the community that the public can see.  The source code

27  underpinning much of web design is generally viewable by anyone with a web

28

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

1  browser or HTML viewing software – that portion of the community web design can

2  be seen by the public and is not necessarily secret.

3      65.    This public-facing HTML code is used to "draw" shapes and write text or

4  media on the page and organize locations of the operational elements of the website.

5      66.    Second, Khoros's software includes its proprietary "Studio Tool" which

6  is only accessible by Khoros customers under strict obligations of confidentiality.

7      67.    The Studio Tool allows a trained user to very quickly create the public-

8  facing code described above.

9      68.    Khoros developed its Studio Tool through years of trial-and-error, using

10  its experience in the community platform industry, and through millions of dollars in

11  R&D. The Studio Tool is a highly detailed and hard-won menu of community website

12  options; it compiles and organizes every conceivable webpage element and

13  configuration that might be used on a community platform – hundreds upon hundreds

14  of them.

15      69.    The Studio Tool provides a user with the ultimate flexibility and instant

16  know-how for designing a high-functioning, unique, and attractive community

17  platform.  While any one of the individual elements collected in the Studio Tool might

18  be used in a given Khoros-supported community, the overall aggregation of these

19  options is not public, and it would be extraordinarily difficult for a competitor or

20  former Khoros customer to reconstruct the highly detailed, aggregated and efficiently

21  organized format of the Studio Tool.  Khoros's Studio Tool is a Khoros trade secret.

22      70.    The Studio Tool would provide an unauthorized user with a multi-year

23  head start in developing and optimizing its own community platform, with an

24  associated cost savings in the hundreds of millions of dollars.

25      71.    Third, Khoros's software includes another set of non-public and

26  proprietary computer code that runs the entire software suite.

27

28

9

72.   This code is not available to anyone outside Khoros, even Khoros customers.

73.   It is Khoros's trade secret.

74.   This code includes proprietary macros, APIs (application program interfaces) and databases.

75.   It integrates the Studio Tool with the public-facing HTML code of Khoros-hosted communities and is the engine that makes it all run.   This "back-office" code is non-public and proprietary to Khoros.

76.   It does, however, integrate with Khoros's proprietary Studio Tool, to which Khoros's customers have access.

77.   The internal commands and communications between this back-office code and the Studio Tool are instructive as to how Khoros's back-office engine works and its overall architecture.
A customer with sufficient technical resources (like Lenovo) in possession of the Studio Tool could reverse-engineer a substantially similar version of the back-office software based upon the clues provided by the internal communications and commands between the Studio Tool and that software.

78.   Lenovo's new community looks strikingly like the community previously developed and hosted by Khoros.  As a result, Khoros conducted a thorough review of Lenovo's new community, looking at is construction (through an analysis of the public-facing code describe above), its layout, its terminology, and its functionality.

79.   Lenovo's copycat community site looks and functions strikingly like the one previously created and hosted by Khoros. It contains the same color schemes, page outlines, URL structures, Khoros's unique community terminology, and overall look and feel.

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

80.   Further investigation revealed that not only did Lenovo design its copycat site to visually look substantially like the one created by Khoros, but it actually cut-and-pasted Khoros's HTML source code for several of its site components.

81.   When Lenovo's copycat community went live, Khoros employees viewed the publicly-viewable source code Lenovo used to create its community.  That source code contained lines of code that were cut-and-pasted directly from Khoros's previous Lenovo community.

82.   The copying was obvious, as the code used contained vestiges of older Khoros code unique to its site that had not been completely "cleaned up" over time. As such, Lenovo flagrantly violated paragraphs 2.3, 3.4, and 6.5 of the MSA.

### D. Lenovo misappropriates Khoros's trade secrets by reverse-engineering its proprietary "Studio Tool" and application program interfaces.

83.   Not only did Lenovo do a wholesale cut-and-paste job with Khoros's public-facing code, it also reverse-engineered Khoros's Studio Tool and its proprietary back-office website architecture, APIs, and macros.

84.   As mentioned, when it was a Khoros customer, Lenovo had access to Khoros's Studio Tool.  The evidence collected by Khoros demonstrates convincingly that Lenovo not only copied the Studio Tool, it also used the communications between the Studio Tool and Khoros's back-office software to reverse-engineer its confidential and proprietary community website architecture.

85.   With respect to the Studio Tool, the components that make up the Lenovo community-site (*i.e.*, the menus, options, categories of information, taskbars, query sections, *etc.*) match nearly exactly components that have been aggregated and constructed in Khoros's Studio Tool.

86.   Each one of the elements Lenovo presently uses on its new self-hosted community has a direct cognate to one of the Khoros-created user options contained in the Studio Tool.

11

87.   In addition, portions of the new Lenovo community use components and check boxes derived from the Studio Tool that have no functionality because they are not yet linked to the back-office software that Lenovo reverse-engineered.

88.   These factors demonstrate that Lenovo effectively appropriated the Studio Tool and is using it (or a direct copy) to populate the public-facing fields of its community site.

89.   Khoros's Studio Tool works as the conduit between Khoros's non-public back-office software suite and its public-facing HTML code.

90.   Described in simplified terms, the Studio Tool communicates with the back-office software by sending and receiving certain commands.

91.   A sophisticated user intent on misappropriating Khoros's information can analyze those commands to discern the architecture of the back-office databases, macros and APIs that make the whole system work.

92.   Based upon the functionality of Lenovo's current community, its clear use of Khoros's Studio Tool to create that site, and the sheer speed at which Lenovo developed its community, it is apparent that Lenovo not only took the portions of Khoros's software to which it has access as a customer, but went the next step and stole Khoros's non-public code via reverse-engineering the back-end aspects of Khoros's trade secret Studio Tool (*i.e.*, it leveraged one trade secret to reverse-engineer another, tainting the entire process).

12

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

**IV.    Khoros's cease and desist and preservation letters to Lenovo.**

93.    To prevent the further misuse and misappropriation of its trade secrets, and to maintain the secrecy of its trade secrets, Khoros issued a cease and desist letter to Lenovo on March 16, 2020.

94.    Khoros's cease and desist letter directed Lenovo to permanently decommission the new community Lenovo developed using Khoros's source code and misappropriated trade secrets on or before March 23, 2020.

95.    Lenovo did not respond to or otherwise acknowledge its receipt of Khoros's cease and desist letter.

96.    Accordingly, in anticipation of litigation Khoros's counsel sent a preservation letter to Lenovo on April 3, 2020.

97.    The April 3, 2020 preservation letter instructed Lenovo to preserve all data associated with, among other things, Lenovo's creation, development, and implementation of its self-hosted community platform.

98.    Tellingly, Lenovo disregarded Khoros's preservation letter when it began destroying evidence of its wrongdoing by scrubbing its community's forward-facing HTML code and deleting all code segments mentioning Khoros or incorporating language unique to Khoros's Studio Tool. On information and belief, Lenovo's destruction of evidence began sometime between April 3 and May 7, 2020.

## CAUSES OF ACTION

### Count I - Breach of Contract

99.    Khoros adopts and incorporates paragraphs 1 through 98 as if pleaded fully herein.

100.    Khoros's predecessor, Lithium Technologies, Inc. and Lenovo (Singapore) Pte. Ltd. entered into the MSA on September 26, 2007.

13

101.   Representatives of Lenovo USA negotiated the MSA, provided all direction as to work and engaged in all communications regarding the parties' contractual relationship under the MSA and related Service Orders.

102.   In 2018, the parties extended the MSA contract by signing the 2018 SO.

103.   Lenovo HK signed the 2018 SO on Lenovo's behalf.

104.   Lenovo USA communicated with Khoros in all respects regarding the subject matter of the 2018 SO.

105.   Lenovo USA is Lenovo Singapore's agent and/or *alter ego*, and is bound by the MSA.

106.   Lenovo HK bound itself to the provisions of the MSA when it signed the 2018 SO.

107.   The MSA is a valid and enforceable contract binding upon Lenovo Singapore, Lenovo USA, and Lenovo HK.

108.   Lenovo's employees at all relevant times had access to Khoros's Studio Tool and other non-public aspects of Khoros's community platform software, subject to the MSA's confidentiality obligations.

109.   Lenovo bound itself to a continuing duty of confidentiality and further agreed it would not copy, reproduce, or reverse-engineer Khoros's software, including Khoros's HTML code, Studio Tool, and back-office software.

110.   Lenovo breached its contractual obligations under the MSA when it created its own community platform by cutting and pasting Khoros's HTML code and copying Khoros's Studio Tool and using it to reverse-engineer Khoros's back-office code.

111.   At a minimum, Lenovo has breached Sections 2.3, 3.4, 6.5 and 10 (including subparts) of the MSA.

112.   Lenovo's breach of the MSA has significantly damaged Khoros and unjustly enriched Lenovo, in an amount to be proven at trial.

14

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

## Count II

### Violation of Federal Defend Trade Secrets Act ("DTSA") – 18 U.S.C. §1836

113.   Khoros adopts and incorporates paragraphs 1 through 112 as if pleaded fully herein.

114.   Khoros's Studio Tool is a trade secret.

115.   Khoros's non-public back-office source code (as described herein) is a trade secret.

116.   Pursuant to the terms of the MSA, Khoros provided Lenovo with access to its Studio Tool on a strictly confidential and limited basis.

117.   The Studio Tool and Khoros's back-office source code derive independent economic value from not being generally known to, or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

118.   Khoros took reasonable steps to protect the confidentiality of its Studio Tool and back-office code.

119.   This included limiting the Studio Tool's availability to customers, like Lenovo, who first signed a confidentiality agreement and agreed to not engage in unauthorized use of the software, and not permitting others to access, view, or use the Studio Tool.

120.   Khoros further protected the Studio Tool by requiring its customers, like Lenovo, to designate administrators who could only access the tool with a username and password.

121.   Khoros took reasonable steps to protect the confidentiality of its back-office source code which runs its software suite.  Such code is not publicly available, even to customers.   It is kept under password protection and encryption even within Khoros itself, and only limited Khoros employees have the ability to access or view this source code.

REDACTED VERSION OF PLAINTIFF'S COMPLAINT

122. Khoros's computer systems, including those housing its back-office source code and Studio Tool, are protected from external threat, hacking, and viruses using up-to-date protection software. They can be accessed only by company employees with appropriate credentials.

123. Access to Khoros's offices are regulated, and members of the public cannot access its offices without authorization.

124. On information and belief, Lenovo misappropriated the Studio Tool when it copied it and/or continued using it following the termination of its agreement with Khoros.

125. On information and belief, Lenovo misappropriated Khoros's back-office software by using the Studio Tool, which it illegally copied or retained following the termination of the parties' agreement, to reverse-engineer some or all of Khoros's back-office source code to create its own substantially similar community platform.

126. Lenovo's actions, as described herein, constitute a wrongful and willful misappropriation of Khoros's trade secrets.

127. Lenovo's wrongful and willful misappropriation of Khoros's trade secrets has allowed Lenovo to enjoy unwarranted pecuniary gain in the form of increased profits as well as a substantial savings in time and development costs. Lenovo has been unjustly enriched, and has obtained the value of Khoros's trade secrets without compensating Khoros for it.

128. As a direct result of Lenovo's wrongful and willful misappropriation of Khoros's trade secrets, Khoros has suffered, and continues to suffer, direct and actual damages. It seeks compensation in the form of damages for actual loss, damages for unjust enrichment, or alternatively, a reasonable royalty in amounts to be determined at trial.

16

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

129.   Lenovo's misappropriation of Khoros's trade secrets was willful.  As a result, Khoros is entitled to double damages against Lenovo pursuant to 18 U.S.C. §1836(b)(3)(C).

130.   Khoros is entitled to punitive damages to the extent permitted by law.

131.   Khoros is entitled to preliminary and permanent injunctive relief prohibiting Lenovo for continuing to misappropriate its trade secrets.

132.   Khoros is entitled to an award of its reasonable attorney's fees, expenses, and costs resulting from Defendants' violation of the DTSA, as set forth herein.

## Count III

## Violation of the California Uniform Trade Secrets Act ("CUTSA") – Cal. Civ. Code §3426

133.   Khoros adopts and incorporates paragraphs 1 through 132 as if pleaded fully herein.

134.   Khoros's Studio Tool is a trade secret.

135.   Khoros's non-public back-office code (as described herein) is a trade secret.

136.   Pursuant to the terms of the MSA, Khoros provided Lenovo with access to its Studio Tool on a strictly confidential and limited basis.

137.   The Studio Tool and Khoros's back-office source code derive independent economic value from not being generally known to, or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

138.   Khoros took reasonable steps to protect the confidentiality of its Studio Tool and back-office code.  This included limiting the Studio Tool's availability to customers, like Lenovo, who first signed a confidentiality agreement and agreed to not engage in unauthorized use of the software, and not permitting others to access, view, or use the Studio Tool.

17

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

139.  Khoros further protected the Studio Tool by requiring its customers, like Lenovo, to designate administrators who could only access the tool with a username and password.

140.  Khoros took reasonable steps to protect the confidentiality of its back-office source code which runs its software suite.  Such code is not publicly available, even to customers.  It is kept under password protection and encryption even within Khoros itself, and only limited Khoros employees have the ability to access or view this source code.

141.  Khoros's computer systems, including those housing its back-office source code and Studio Tool, are protected from external threat, hacking, and viruses using up-to-date protection software.  They can be accessed only by company employees with appropriate credentials.

142.  Access to Khoros's offices are regulated, and members of the public cannot access its offices without authorization.

143.  On information and belief, Lenovo misappropriated the Studio Tool when it copied it and/or continued using it following the termination of its agreement with Khoros.

144.  On information and belief, Lenovo misappropriated Khoros's back-office software by using the Studio Tool, which it illegally copied or retained following the termination of the parties' agreement, to reverse-engineer some or all of Khoros's back-office source code to create its own substantially similar community platform.

145.  Lenovo's actions, as described herein, constitute a wrongful and willful misappropriation of Khoros's trade secrets.

146.  Lenovo's wrongful and willful misappropriation of Khoros's trade secrets has allowed Lenovo to enjoy unwarranted pecuniary gain in the form of increased profits as well as a substantial savings in time and development costs.

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

Lenovo has been unjustly enriched, and has obtained the value of Khoros's trade secrets without compensating Khoros for it.

147.   As a direct result of Lenovo's wrongful and willful misappropriation of Khoros's trade secrets, Khoros has suffered, and continues to suffer, direct and actual damages.  It seeks compensation in the form of damages for actual loss, damages for unjust enrichment, or alternatively, a reasonable royalty amounts to be determined at trial.

148.   Lenovo's misappropriation of Khoros's trade secrets was willful and malicious. As a result, Khoros is entitled to double damages against Lenovo pursuant to Cal. Civ. Code §3426.3(c).

149.   Lenovo's misappropriation of Khoros's trade secrets was also oppressive and/or fraudulent, entitling Khoros to punitive damages.

150.   Khoros is entitled to preliminary and permanent injunctive relief prohibiting Lenovo for continuing to misappropriate its trade secrets.

151.   Khoros is entitled to an award of its reasonable attorney's fees and costs resulting from Defendants' violation of the CUTSA, as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment in its favor, including:

A. An award of compensatory damages against Defendants in favor of Plaintiff, in an amount to be proven at trial, including damages for actual loss, unjust enrichment, exemplary damages, double damages, punitive damages, attorney's fees, and costs and expenses;

**REDACTED VERSION OF PLAINTIFF'S COMPLAINT**

B. Preliminary and permanent injunctive relief to prevent Defendants from continuing to misappropriate Plaintiff's trade secrets and confidential information; and

C. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 19th day of May 2020.

**HAWKINS PARNELL & YOUNG LLP**

*/s/ Phil J. Montoya, Jr.*

Phil J. Montoya, Jr. (SBN 124085)
445 South Figueroa Street, Suite 3200
Los Angeles, CA 90071-1651
Telephone: (213) 486-8000
Facsimile: (213) 486-8080
Email: pmontoya@hpylaw.com

*Attorneys for Plaintiff Khoros, LLC*

REDACTED VERSION OF PLAINTIFF'S COMPLAINT

Exhibit A
REDACTED

Exhibit B
REDACTED